IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAZA KHAN,<br><br>      Plaintiff,<br><br>   v.<br><br>FIGMA, INC.,<br><br>      Defendant. | Case No.  25-cv-10054-CRB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION** |

Plaintiff Raza Khan brought a putative class action against Defendant Figma, Inc. for misusing intellectual property to train Figma's artificial intelligence ("AI") products. Compl. (dkt. 1) ¶¶ 1–2.  Figma moves to compel arbitration and, in the alternative, to dismiss Khan's complaint.[1]  Mot. (dkt. 19); MTD (dkt. 20).  The Court **GRANTS** the motion to compel arbitration and **STAYS** the case pending arbitration.[2]

"[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes."  Coinbase, Inc. v. Suski, 602 U.S. 143, 145 (2024).  Courts should not assume that parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so."  Id. at 149 (quoting First Options of Chicago, Inc. v. Kaplan, 541 U.S. 938, 944 (1995) (citation modified)).  Therefore, "before referring a dispute to an arbitrator, [ ] the court determines whether a valid arbitration agreement

[1]  The Court grants Figma's request for judicial notice (dkt. 21) and also takes notice of Exhibit G of the Ma Declaration (Figma's 2025 Terms of Service).  See In re Meta Pixel Tax Filing Cases, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) (publicly available websites are proper subjects of judicial notice); Fed R. Evid. 201(c)(1) ("The court may take judicial notice on its own."); Ma Decl. (dkt. 22).

[2]  Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for resolution without oral argument.  The Court presumes familiarity with the factual background and applicable law.

exists." Id. (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019)).

The parties do not dispute the existence of an arbitration agreement. See Mot. at 5; Opp'n (dkt. 29) at 3. Instead, they are divided as to the scope of the agreement and the applicability of a delegation clause. Khan concedes that Figma's 2023 Terms of Service ("TOS") includes an arbitration agreement but contends that he did not agree to arbitrate this action, as it falls within a contractual carve-out to arbitration for injunctive relief to protect intellectual property. Opp'n at 3. Figma disputes the applicability of the carve-out and insists that arbitrability must be decided in the first instance by the arbitrator, pursuant to a delegation clause in both its 2025 and 2023 TOS. See Reply (dkt. 32) at 4–6. Despite Khan's strong arguments regarding the carve-out, the Court agrees with Figma that the threshold question must be decided by the arbitrator.

### A.    Clear and Unmistakable Evidence

For starters, there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Both the 2025 TOS and the 2023 TOS contain delegation clauses.

Figma primarily relies on the express delegation clause in the 2025 TOS. See Ma Decl., Ex. G ("2025 TOS"). The 2025 clause specifies that the "arbitrator will have the exclusive authority to resolve all threshold arbitrability issues, including whether these Terms are applicable, unconscionable, or enforceable, as well as any defense to arbitration." Id. Khan argues that he did not assent to the 2025 TOS at all because he did not receive adequate notice of it. Opp'n at 6. Nevertheless, Khan concedes that he did agree to the 2023 TOS. See id. at 7 ("[T]he 2023 TOS governs."). And those terms permit future modifications that provide for notice of changes by a post on Figma's website or through other communications, with acceptance of changed terms manifested through continued use of Figma services. Ma Decl., Ex. A ("2023 TOS"). The 2025 TOS was posted on Figma's website and Khan continued to use Figma services in 2025.[3] See 2025

_____

[3] Khan argues that Figma fails to address his allegation that "he put Figma on notice of his claim before the effective date of the 2025 TOS." Opp'n at 6. But the complaint—and the paragraph

United States District Court
Northern District of California

TOS; see also Compl. ¶¶ 59–68. Pointing to Stover, Khan asserts that such constructive notice, without more evidence of assent to modification, is insufficient. Opp'n at 6 (citing Stover v. Experian Holdings, Inc., 978 F.3d 1082 (9th Cir. 2020)). Perhaps. But ultimately, the Court need not decide this issue as the 2023 TOS is dispositive.

The 2023 TOS does not have an express delegation clause. Instead, it incorporates the American Arbitration Association ("AAA") Consumer Arbitration Rules, which delegate arbitrability. Ma Decl., Ex. A ("2023 TOS"). In the dispute resolution section, under the question "What rules apply in the arbitration?", the 2023 TOS clarifies that the arbitration will use the AAA rules and provides a link and phone number to access them. Id. The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015). While the Brennan court limited its holding to sophisticated parties, 796 F.3d at 1130, other courts in this district "have concluded that incorporation of the AAA or JAMS rules is sufficient for a court to find intent to delegate arbitrability, regardless of the parties' sophistication." See, e.g., Singh v. Payward, Inc., No. 23-CV-01435-CRB, 2023 WL 5420943, at *7 (N.D. Cal. Aug. 22, 2023); Bazine v. Kelly Servs. Global, LLC, No. 22-cv-7170-BLF, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) (siding with courts holding that incorporation of rules is adequate regardless of party sophistication).

Khan argues that the 2023 TOS does not clearly and unmistakably delegate arbitrability because of the structure of the terms. He relies on an unpublished decision from the Ninth Circuit, Ruiz v. Kelly Servs. Glob., LLC, No. 24-6529, 2026 WL 64283 (9th Cir. Jan. 8, 2026). In that case, there was ambiguity "regarding how to handle disputes about the Agreement itself." Ruiz, 2026 WL 64283 at *1. The arbitration agreement covered claims arising out of the terms but was unclear about arbitrating arbitrability itself. Id. Accordingly, the Ruiz court held that the "incorporation of the

Khan cites—does not provide any detail to support this assertion.

3

AAA rules does not clearly and unmistakably delegate threshold questions of whether a particular claim is arbitrability in the first place." Id. at *2.  The 2023 TOS is different.  In the same section as the incorporation provision, the terms explicitly say arbitration applies to "disputes related to [] use of the Services or these Terms."  2023 TOS (emphasis added).  Plainly, arbitrability is encompassed in the terms themselves.  Consequently, the Court determines that arbitrability must be delegated to determine the threshold issues of this case—regardless of the inefficiency of doing so.

### B.    Other Challenges

Khan raises a few more arguments to avoid arbitration.  All fail.

#### 1.    Unconscionability

Khan argues that the delegation clause—and really, the arbitration agreement as a whole—is unconscionable.  Opp'n at 10.  But when a plaintiff's unconscionability argument is not directed at the "the delegation provision specifically," a court must leave "the validity of the Agreement as a whole for the arbitrator."  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72 (2010).  Accordingly, the Court only addresses Khan's arguments as they relate to the delegation clause, focusing on the 2023 TOS.

"The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."  Sanchez v. Valencia Holding Co., 61 Cal. 4th 899, 910 (2015) (emphasis and citation omitted).  Courts apply a "sliding scale" approach in evaluating procedural and substantive unconscionability, where "more of one kind mitigates how much of the other kind is needed" to render an agreement unconscionable.  See De La Torre v. CashCall, Inc., 5 Cal. 5th 966, 982 (2018) (citations omitted).  "As the party asserting unconscionability as a defense to the enforcement of the arbitration agreement, [Khan] bears the burden of proving unconscionability."  Ronderos v. USF Reddaway, Inc., 114 F.4th 1080, 1089 (9th Cir. 2024) (citation omitted).

#### a.    Procedural Unconscionability

Khan argues that the delegation clause is adhesive, the opt-out procedure is not

United States District Court
Northern District of California

meaningful, and the clause lacks clarity and causes surprise.  Opp'n at 11.

Khan asserts that the clause is adhesive because he "had no meaningful opportunity to negotiate and Figma had superior bargaining power."  Id.  While Figma has more bargaining power, there is nothing to suggest that Khan could not seek an alternative AI platform.  See Pearl v. Coinbase Glob., Inc., No. 22-CV-03561-MMC, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023) (ability to choose alternatives undermines adhesion).  Moreover, the 2023 TOS has an opt-out provision, and the Ninth Circuit has "held that an arbitration agreement is not adhesive if there is an opportunity to opt out of it."  Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1211 (9th Cir. 2016) (opt-out provision supported the "holding that the delegation provision [was] not unconscionable").  Nevertheless, Khan contends that the opt-out procedure is not meaningful as a consumer would not know they should opt out to bring equitable claims in court.  Opp'n at 11.  But that is not relevant to arbitrating arbitrability, as Khan may very well end up back in court.  And as Figma points out, such uncertainty about the scope of an arbitration carve-out could potentially void all future-looking opt-out procedures.  Reply at 9.  Khan does not provide legal authority supporting his interpretation.

Khan also argues that the delegation clause is unclear and surprising as there are different versions of the TOS, and the text does not call attention to the delegation clause.  Opp'n at 11–12.  Notwithstanding the fact that the 2025 TOS and the 2023 TOS are explicitly different in terms of the applicable rules, the Court focuses on the 2023 TOS in its analysis.  Compare 2023 TOS (AAA rules) with 2025 TOS (National Arbitration and Mediation rules).  Further, the text of the 2023 TOS includes the question in bold "What rules apply in the arbitration?" and then provides the link and number to access the AAA rules.  2023 TOS.  The Court does agree, however, that the lack of an express delegation clause in the 2023 TOS conveys at least "a minimal degree of procedural unconscionability."  See Aggarwal v. Coinbase, Inc., 685 F. Supp. 3d 867, 881 (N.D. Cal. 2023).  But as discussed further below, it does not rise to the level of unconscionability that warrants invalidating the delegation clause.

5

### b.    Substantive Unconscionability

Khan contends that the delegation clause is substantively unconscionable because he did not agree to arbitrate claims for injunctive relief and believes delegation would delay adjudication and chill lawsuits.  Opp'n at 12.  Not so.  It is not unconscionable to delegate to an arbitrator the scope of an arbitration agreement; indeed, it is routine.  See e.g., Pearl, 2023 WL 1769190 at *8 (noting that numerous courts have found that a carve-out's scope must be decided by an arbitrator).  And any delay due to arbitrating arbitrability is not so severe as to be substantively unconscionable.  This case does not involve potentially significant delays like the batching provision for a mass arbitration in Pandolfi II.  See Opp'n at 12 (citing Pandolfi v. Aviagames, Inc., No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025)).

### 2.    Remaining Challenges

Khan brings two additional arguments.  First, he asserts that the venue term, which provides for cases "not handled by arbitration" to be brought in state or federal court in San Francisco, conflicts with the delegation clause.  Opp'n at 9 (quoting 2023 TOS).  But there is no conflict.  If the arbitrator decides that Khan's claims fit within the arbitration carve-out, then Khan may continue his action.  If not, then his action would be one handled by arbitration under the 2023 TOS and thus not appropriate in court.  Second, Khan argues that the class action waiver in the 2023 TOS is at odds with California law (the McGill rule) requiring the availability of public injunctive relief under the Unfair Competition Law.  Id. at 13.  As a result, he contends that his claim under the Unfair Competition Law cannot be arbitrated.  See id.  That may well be true—but it is an argument Khan must bring before the arbitrator, not the Court.[4]  Marselian v. Wells Fargo & Co., 514 F. Supp. 3d 1166, 1177 (N.D. Cal. 2021) (McGill rule issue was "a question for an arbitrator.")

### C.    Conclusion

For the foregoing reasons, the Court **GRANTS** Figma's motion to compel

---

[4] The Court determines that it is premature to strike Khan's class allegations, as Figma requests. Moreover, as discussed, the applicability of the class waiver is for the arbitrator to decide.

United States District Court
Northern District of California

arbitration and stays this action pending the completion of arbitration proceedings.[5]

**IT IS SO ORDERED.**

Dated: May 8, 2026

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

---

[5] "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceedings." Smith v. Spizzirri, 601 U.S. 472, 478 (2024) (citing 9 U.S.C. § 3 (a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.")).

7